### MOONEY v. CARTER.

(Circuit Court of Appeals, Fifth Circuit. March 12, 1907. On Rehearing April 17, 1907.)

#### No. 1,528.

DEATH—ACTION FOR WRONGFUL DEATH—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate and another were fishing from a rowboat anchored in the Tennessee river at night without having the white light displayed above the stem, as required by the rules of the supervising inspector, when the boat was run down by defendant's steamer which was pushing a barge in front. The occupants of the boat after trying to attract the attention of those on the steamer jumped from the boat, and plaintiff's intestate was drowned. The steamer did not have a proper lookout, but the master, as soon as the boat was discovered, stopped his vessel, but not in time to prevent striking the boat. *Held*, that both the steamer and the deceased were in fault for violating the navigation rules, and that the death being the result of the combined negligence, there could be no recovery therefor under Code Ala. 1896, § 27, giving a right of action for death caused by the wrongful act or negligence of another.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 25.]

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

This is an action to recover damages for the death of one Charles J. Smith, under section 27 of the Code of Alabama of 1896, which provides an action for wrongful act, omission, or negligence causing death.

The plaintiff below presented his cause of action in five several counts, each setting forth a different theory.

Each count states that on the night of June 18, 1904, Charles J. Smith, the intestate of defendant in error, and one Wissinger, were sitting in a small skiff at anchor in the Tennessee river, opposite the city of Decatur, Ala., and that said Smith and Wissinger were engaged in manipulating a trot line, and while so situated and engaged they were approached by a steamboat of the said James E. Mooney, and that said steamer was pushing a barge; that said steamer was under the control of one William Sellars as master thereof; that said steamer ran straight toward said skiff, and, notwithstanding said Charles J. Smith and his companion displayed signals of their whereabouts and danger by swinging a lighted lantern and giving loud cries of distress, said steamer ran straight at the skiff without giving any answer or response; and that said Charles J. Smith and his companion, being unable to change the location of their skiff or to lift the anchor, were forced to jump into the water, and that said Smith was drowned. This statement of alleged facts is common to all the counts of the complaint. Each count goes further and alleges different causes for the injury. The first count charges that the death of Smith resulted from the negligence of Sellars, as master of the steamer, in failing to have a proper person stationed as a lookout in a suitable position on either the boat or barge. The second count was abandoned during the progress of the trial. The third count charges the negligence of Sellars after he discovered the peril of said Smith, in that he saw the signals of distress displayed by said Smith and his companion, but negligently and wrongfully persisted in holding the steamer to the course until it struck the skiff out of which said Smith and his companion had just sprung. In the fourth count it is charged that the death of Smith was caused by the wantonness and willfullness of said Sellars as master, in that he saw the signals of distress displayed from the skiff, and knew that human beings were in the skiff, and could have changed his course, and yet he willfully and wantonly kept the steamer in a straight course on to the skiff, necessitating the jumping therefrom of said Smith. The last count charges the wrong and negligence of the lookout on said steamer who saw the signals in time to have had the steamer stopped had he heeded said signals, yet he ignored said signals, and allowed the steamer to proceed until too late to prevent a collision.

The defendant below pleaded the general issue to all the counts—the contributory negligence of Smith, in that after seeing the approaching steamer he took no steps to lift or loosen the anchor of his skiff until it was too late, averring that he could have done so and have gotten out of the path of the steamer if he had tried when he first saw her approach; also the contributory negligence of Smith in being seated in a small skiff or rowboat in the Tennessee river on a dark night, without having a white light stationed two feet above the stem of the boat in which he was sitting, in violation of the rule of the supervising inspector of steamboats, approved February 8, 1899, which requires rowboats to carry a white light two feet above the stem of the boat; and, also, the contributory negligence of Smith in jumping out of the skiff into the river when, if he had remained in the skiff, he would not have been injured.

On the trial and in due season, the defendant below requested the court to give numerous instructions to the jury covering all phases of the case, which instructions were all refused, and exceptions were duly taken. The assignments of error present them seriatim.

W. W. Callahan, for plaintiff in error.

S. S. Pleasants and E. W. Godbey, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

PARDEE, Circuit Judge (after stating the facts). From the view we take of the case, we find it only necessary to consider one assignment, to wit, the court erred in refusing the following instruction: "If the jury believe the evidence they will find for the defendant."

Counsel for defendant in error, after a short statement, begin their brief with the proposition: "We submit that on the undisputed evidence the defendant in error was entitled to the general affirmative charge." As the defendant below requested the affirmative charge for the defendant, and the counsel for the plaintiff below insist in this court that the affirmative charge should have been given for the plaintiff below, it seems that there cannot be much dispute of fact in the case "to deflect or control the questions of law." See Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654.

We have carefully read the evidence all brought up in the transcript, and we conclude that the steamer was guilty of negligence in not having a proper and sufficient lookout. The Ottawa, 3 Wall. 268, 18 L. Ed. 165; The Genesee Chief, 12 How. 443, 13 L. Ed. 1058; St. John v. Paine, 10 How. 567, 13 L. Ed. 537; Manhasset (D. C.) 34 Fed. 408; St. Nicholas (D. C.) 49 Fed. 679; Geo. W. Childs (D. C.) 67 Fed. 270. We also conclude that the failure of Smith and his companion, when on a dark night in a rowboat anchored in the channel of the Tennessee river, to carry a white light two feet above the stem of the boat, as required by the rules of the supervising inspector of steamboats, approved February 8, 1899, was negligence. Belden v. Chase, 150 U. S. 698, 14 Sup. Ct. 264, 37 L. Ed. 1218.

It is possible that if the steamer had had a vigilant and sufficient lookout, the location of Smith and his companion in the rowboat might have been discovered in time to have prevented injury. It is equally possible that if Smith and his companion had carried the regulation light two feet above the stem of the rowboat the inefficient lookout on the steamer would have seen the same in time to have avoided the injury. But these are conjectures. The actual case is that both the steamer and Smtih were in fault, and the death of Smith was the result of the combined negligence.

There is no sufficient evidence to support the specific allegation of the third count that after Sellars had discovered the peril of Smith and saw signals of distress displayed, he negligently persisted in holding the steamer to her course. The proof is undisputed that as soon as Sellars was warned of the position of the skiff, he stopped the steamer, and to such purpose that the life of Smith's companion was saved, he being picked up by the steamer. Nor is there sufficient evidence to warrant any finding that the master of the steamer was guilty of any willfullness or wantonness in sailing his vessel, or in failing to stop and change his course, when he saw or heard the signals of distress displayed from the skiff.

Reversed and remanded.

## On Rehearing.

PER CURIAM. No one of the judges who participated in the decision of this case desiring a reargument or rehearing, the petition for rehearing is denied.