Ravis *v.* Shehulskie, Appellant.

Argued May 8, 1940. Before SCHAFFER, C. J., DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*John L. Pipa, Jr.,* for appellant.

*J. Fred Schaffer,* with him *Helen J. Schaffer,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1940:

Theodore Ravis, appellee, instituted an action of trespass against Thomas Shehulskie, appellant, to recover

damages for personal injuries sustained by him while he was riding as a guest in an automobile owned and operated by the appellant. At the conclusion of appellee's case, appellant moved for a compulsory nonsuit which was refused. Thereupon he presented a point for binding instructions in his favor, without offering any evidence, which was likewise refused, and the case was submitted to the jury. After a verdict for appellant, the court below, upon motion of appellee, granted a new trial on the ground of prejudicial error of law in its charge to the jury and on the further ground of material after-discovered evidence. This appeal followed.

In its charge to the jury the court below instructed as follows: "Where a courteous carriage is for the sole benefit of a guest, then the law requires slight diligence and makes the carrier only responsible for gross neglect, but where it is for the benefit of either or both parties, then, as we have said, ordinary diligence is required of the carrier, the man who drives the automobile is responsible for only ordinary neglect. . . . You will determine whether the journey was for the sole benefit of the plaintiff or whether the journey was for the benefit and pleasure of the two of them—and as you determine this fact from the evidence you will apply the law as we have set it down, the law as distinguishing between whether ordinary care was required of the defendant on this occasion, or whether more than ordinary care was required, or whether less than ordinary care, I should say, was required and he would only be responsible if he was grossly negligent."

In his brief appellant sets forth the above-quoted portion of the charge and states: "Appellant frankly admits that the charge as above set out is not in line with the decision of this Court in the case of *Spencer v. Jones,* 319 Pa. 231." In that case the present Chief Justice said, at 232-33: "Under the presentation of the case, made by appellant's able attorney who argued it before us, we have but one question to meet: What was the

degree of care which defendant owed to the deceased? The argument is that it was not ordinary care, but that to a self-invited passenger, as deceased was, the defendant is liable only if he wantonly or wilfully injured him, and that in this class of cases we should adopt the Massachusetts Rule enunciated in *Massaletti v. Fitzroy,* 118 N. E. 168, which is analogous to the rule of liability in the case of bailment. . . . How some of the other states may have determined, with us the rule of ordinary care in such cases is fixed and not to be departed from, since we regard the principle we have established as being the just one." To this same effect are *Richards v. Warner Co.,* 311 Pa. 50 (wherein, at page 59, this court said: "It is argued on behalf of Huggins that as to Mrs. Richards and her son he was a gratuitous bailor for their benefit and, therefore, responsible only for gross negligence. In this connection *Cody v. Venzie,* 263 Pa. 541, is called to our attention. Whether driving an automobile into the side of a truck in broad daylight is gross negligence may be a matter fruitful of discussion, but we need not explore the subject, as in our opinion the absence of ordinary care on Huggins' part is sufficient to fix him with liability. In the Cody Case, the want of ordinary care was held sufficient to warrant a verdict for plaintiff"), and *Curry v. Riggles,* 302 Pa. 156 (where, at 159, the following appears: "The trip was undertaken for plaintiff's accommodation and he was a gratuitous passenger, toward whom defendant was required to exercise ordinary care").

Inasmuch as the rule of law adopted by the court below in its oral charge to the jury for their guidance in determining appellant's liability was, as appellant admits, erroneous, under the decisions referred to, the charge was manifestly prejudicial to appellee's case.

But, appellant takes the position that "whether the court erred or did not err in its charge has nothing to do with this case for the reason that the case should not have reached the point where a charge was necessary."

The court below, appellant contends, "should have affirmed defendant's point for binding instructions because plaintiff failed to establish a case of negligence against the defendant, and the case should have there ended." While it is true that under these circumstances an order granting a new trial will be reversed *(Straus v. Rahn,* 319 Pa. 93, 95; *Fornelli v. Penna. R. R. Co.,* 309 Pa. 365, 369), this is clearly not such a case, as a review of the undisputed facts will show.

Appellant and appellee were both employed at the Pennsylvania Collieries of the Susquehanna Collieries Company, where, due to the flooded condition of the mines, there was an early quit, at about ten o'clock in the morning of March 16, 1938. When appellee came out of the mines he found that his sons, with whom he usually rode to and from his work, had already left, whereupon appellant offered to take him in his, appellant's, car. Appellee accepted the invitation. They drove to the home of appellee's mother-in-law, in Shamokin, looking for appellee's sons, failed to find them there, and then went to appellant's home, where they remained until 12:30 noon when, at appellee's request, appellant drove him to the west end of Shamokin to look for the sons at another place. When they did not find the sons at that place, appellant said, "I take you so far, I take you home," and they proceeded towards appellee's home in Augustaville, some twelve miles distant, over a mountainous, macadam road, with appellee riding in the rear seat. According to appellee's uncontradicted testimony, appellant drove "all right" until they came to a sharp curve to the right when, without warning, appellant drove the car off the highway on the left side of the road and over a four or five foot embankment, breaking appellee's neck and otherwise injuring him. According to the testimony it was raining and the road was wet, but not slippery.

Under the decisions of this Court in *Moquin v. Mervine,* 297 Pa. 79; *Knox v. Simmerman,* 301 Pa. 1, and

*Maltz v. Carter,* 311 Pa. 550, and the decisions of the Superior Court in *O'Brien v. Gray,* 121 Pa. Superior Ct. 27, and *Deveraux v. Caldin,* 127 Pa. Superior Ct. 595, all of which cases involved factual situations substantially similar in their legal aspects to the case in hand, the above narrated facts made out a prima facie case for liability which could be overcome only by exculpatory evidence showing that the accident did not arise from want of care on appellant's part. *Lithgow v. Lithgow,* 334 Pa. 262, and *Riley v. Wooden,* 310 Pa. 449, relied upon by appellant, are easily distinguishable from the present case, and are therefore not in point. In the former, the testimony established only that the car of the defendant in that case skidded, and, as was there pointed out, at 265, this Court has repeatedly held that the skidding of an automobile does not of itself establish negligence on the part of the driver. Furthermore, it was expressly noted that the record in that case failed to disclose whether the car actually left the road. In the latter case, the evidence showed that the defendant there exercised due care, as appears from the following quotation therefrom, at 452: "Plaintiffs say they come within the rule 'when the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.' They have shown a case outside the rule. . . . Defendant, though called by them for cross-examination, has explained it, and, as they have not impeached his testimony, they are bound by it. . . . He described what occurred; apparently told all that he knew about it; from his account it appears that he omitted nothing that he could have done."

As this Court said in *Koch v. Imhof,* 315 Pa. 145, at 147, "One who asserts that a trial judge abused his discretion in granting or refusing to grant a new trial, has

a heavy burden to carry; too heavy, indeed, unless he can show a clear abuse of discretion by the court below." It is apparent that appellant has failed to meet that burden in the present case.

In view of what has already been said, there is no occasion to consider the question of after-discovered evidence and the propriety of the order granting a new trial on that ground.

The order appealed from is affirmed.